1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                            EUREKA DIVISION

7

8    OSVALDO RISCO,                          Case No.  18-cv-07193-RMI

9                     Plaintiff,

10        v.                                 **ORDER**

11   ANDREW M. SAUL,                         Re: Dkt. Nos. 24, 30

12                     Defendant.

13

14          Plaintiff, Osvalo Risco, seeks judicial review of an administrative law judge ("ALJ")

15   decision denying his application for disability insurance benefits and supplemental security

16   income under Titles II and XVI of the Social Security Act.  Plaintiff's request for review of the

17   ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the

18   "final decision" of the Commissioner of Social Security which this court may review. *See* 42

19   U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge

20   (dkts. 9 & 12), and both parties have moved for summary judgment (dkts. 24 & 30). For the

21   reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny

22   Defendant's motion for summary judgment.

23                            **LEGAL STANDARDS**

24          The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

25   conclusive." 42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set

26   aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

27   error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The phrase

28   "substantial evidence" appears throughout administrative law and direct courts in their review of

United States District Court
Northern District of California

factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

This case has been pending for more than 10 years and the same ALJ (Thomas J. Gaye) has written three opinions thus far. On February 26, 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income, initially alleging an onset date of June 1, 2002, but which was later amended to allege an onset date of February 26, 2010. *See* Administrative Record "*AR*" at 40, 141, 628.[1] The ALJ's most recent denial of Plaintiff's applications occurred on November 20, 2017. *Id*. at 643. The Appeals Council denied Plaintiff's request for review on September 24, 2018. *Id*. at 620-22.

**SUMMARY OF THE RELEVANT EVIDENCE**

Plaintiff submits, in pertinent part, that the ALJ in this case violated the law of the case doctrine as well as the rule of mandate by failing to adhere to the holdings and instructions provided in a previous remand order from this court, necessitating remand for further proceedings before a different ALJ. *See* Pl.'s Mot. (dkt. 24-1) at 5, 16, 19-20, 21. Accordingly, the following is a recitation of the evidence relevant to this claim.

On March 14, 2012, the ALJ wrote the first of his three opinions denying Plaintiff's applications. *AR* at 141-48. Therein, the ALJ found that Plaintiff suffered from the following

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #16. *See* (dkts. 16-1 through 16-18).

United States District Court
Northern District of California

severe impairments: degenerative changes of the left shoulder, left hand, both knees, neck, and lower back; sensorineural hearing loss in both ears; and obesity. *Id*. at 144. In this decision, the ALJ rejected the opinion of Plaintiff's treating physician, Chi-Ling Lin, D.O., who had opined that Plaintiff was unable to work at jobs requiring heavy lifting or prolonged standing, walking, or sitting, due to persistent chronic lower back pain. *Id*. at 146 (citing *id*. at 506). Upon rejecting Dr. Lin's opinion, the ALJ determined that Plaintiff was capable of performing the full range of work at the medium exertional level, and that he could either work as a bakery truck driver (Plaintiff's past relevant work as described by the ALJ), or, alternatively, as a salvager. *Id*. at 144, 147. This decision was reversed by the Appeals Council, and the case was remanded back to the same ALJ because, *inter alia*, the decision failed to "provide adequate rationale for according 'little weight' to the treating source opinion from primary care physician Chi Ling Lin, D.O., that the claimant was unable to work at jobs requiring heavy lifting or prolonged standing, walking or sitting." *Id*. at 154-55.

Thereafter, the ALJ wrote the second of his three opinions. *Id*. at 40-49. This time, the ALJ found that Plaintiff only suffered from two severe impairments – degenerative disc disease of the lumbar spine and obesity. *Id*. at 42. Once again, the ALJ afforded Dr. Lin's opinion "little weight" because the ALJ found the statement to be too vague and lacking by way of explanation or basis, noting also that Dr. Lin's opinion was "inconsistent with the sparse radiological findings and limited physical examination findings." *Id*. at 45, 47. The ALJ added that Dr. Lin's "treatment notes pain (sic) a different picture of Plaintiff's abilities than Dr. Lin's subsequent statement and the undersigned finds the record of treatment to be more persuasive." *Id*. at 47. Thus, for a second time, the ALJ found that Plaintiff was capable of performing the full range of medium work, including working in his past relevant employment capacity as a bakery truck driver, and alternatively concluding that there were other jobs existing in significant numbers in the national economy that Plaintiff could also perform. *Id*. at 44, 48. This decision was affirmed by the Appeals Council on March 30, 2015. *Id*. at 12-14.

A few months later, in July of 2015, Plaintiff sought review in this court. *Id*. at 672. After the filing of a Complaint for Judicial Review, the Administrative Record, and a full round of

1  briefing by the Parties, the Honorable Nathaniel Cousins entered an Order (hereafter, "*Risco-I*")

2  that once again remanded the case for further administrative proceedings. *Id*. at 676-96.

3  Specifically, Judge Cousins found that the ALJ's second decision was erroneous in that: the ALJ

4  had again improperly discounted Dr. Lin's opinion; that the ALJ failed to consider Plaintiff's back

5  pain and the potential side effects of his medications in the formulation of Plaintiff's residual

6  functional capacity ("RFC"); and, that the ALJ failed to consider Plaintiff's non-exertional non-

7  severe impairments pertaining to his hearing and vision loss at Step Five. *Id*. at 677-78. Judge

8  Cousins further noted that Dr. Lin's submission of a disability form, in which she had opined that

9  Plaintiff's condition would be disabling for more than one year, was found arbitrary, vague, and

10 baseless by the ALJ. *Id*. at 680. Judge Cousins recounted that Dr. Lin had started treating Plaintiff

11 in June of 2011, and that she had subsequently provided two opinion statements in January and

12 February of 2012. *Id*. at 685-86. On January 20, 2012, Dr. Lin authored an opinion letter stating

13 that Plaintiff has experienced chronic lower back pain for many years which rendered him unable

14 to perform any employment functions that required heavy lifting or prolonged standing, walking,

15 or sitting. *Id*. at 686. The following month, on February 29, 2012, Dr. Lin completed a doctor's

16 certificate for state disability in which she explained that Plaintiff's chronic lower back pain was

17 due to lumbar disc disease and stenosis, and that Plaintiff's disability began in July of 2011 and

18 could be expected to last until August of 2012. *Id*. (citing *id*. at 524).

19     Judge Cousins then proceeded to describe the objective medical evidence on which Dr. Lin

20 had based her opinions regarding Plaintiff's limitations. *Id*. at 686-87 (citing *id*. at 465-67, 495,

21 496-97). Accordingly, Judge Cousins found that it was error to discard Dr. Lin's opinion because:

22          Throughout the doctor-patient relationship, Dr. Lin noted Risco's
            back pain, and when she wrote the letter and the doctor's certificate,
23          she knew the MRI results. Indeed, in the January 10, 2012, doctor's
            visit the ALJ found inconsistent with Dr. Lin's opinion, Dr. Lin found
24          back pain, which undermines the ALJ's use of those treatment notes
            to discredit her opinions. However, even assuming some
25          improvement in early 2012, occasional symptom-free periods . . . are
            not inconsistent with disability. Also, though Dr. Lin's medical
26          opinions may have been brief and conclusory, the Court is not
            convinced they were inadequately supported by clinical findings.
27          Thus, the court finds the ALJ failed to give specific and legitimate
            reasons supported by substantial evidence in the record for rejecting
28          Dr. Lin's medical opinions.

4

*Id.* at 687 (internal citations and quotation marks omitted). Further, Judge Cousins also found that "[g]iven the ALJ's erroneous discrediting of Dr. Lin's medical opinions [], it is unclear whether or not the ALJ's determination of Risco's back pain [level] was supported by substantial evidence, since he did not properly consider all of the relevant evidence of back pain . . . [thus] it is likely that had the ALJ given more credit to Dr. Lin's opinions, Risco's allegations of back pain would have led the ALJ to find work limitations." *Id.* at 692-93.

As to Plaintiff's complaints about the side effects of his medications, Judge Cousins found that the ALJ's second decision had ignored the Appeals Council's mandate specifically directing the ALJ to consider Plaintiff's complaints that his medications made him dizzy and sleepy, and that they exasperated his kidney problems. *Id.* at 693. Accordingly, Judge Cousins found "error in the ALJ's failure to even consider the side effects of dizziness or sleepiness in the [second] decision." *Id.* (noting also that "[t]his failure to even consider Risco's claims regarding these symptoms also flies in the face of the Appeals Council's directive."). Lastly, Judge Cousins noted that because the non-exertional impairments of hearing and vision loss were documented by substantial evidence in the record, "the ALJ was still required to discuss these impairments at Step Five," even though they were both found to be non-severe at Step Two. *Id.* at 695. Thus, Judge Cousins found that "[g]iven the evidence of non-exertional limitations, the Court is not persuaded that the ALJ's direct application of the grids at step five was appropriate." *Id.* In summary, *Risco-I* concluded that the ALJ erred: (1) "as to the weight given to Dr. Lin's opinion" (meaning that the opinion was due to be given greater weight on remand); (2) by failing to give consideration to the side effects of Plaintiff's medications in formulating the RFC; and, (3) by failing to take into account Plaintiff's non-exertional non-severe impairments at Step Five. *Id.* at 696.

Following the remand from *Risco-I*, the Commissioner once again assigned the case to the same ALJ. *See id.* at 643. This time, the ALJ found that Plaintiff suffered from the following list of severe impairments: degenerative changes of the lumbar spine; degenerative changes of the left shoulder; degenerative changes of the left hand; degenerative changes in both knees; degenerative changes in the right foot and ankle; and, obesity. *Id.* at 630-31. First, the ALJ discounted Plaintiff's bilateral hearing loss, noting that "although audiogram [testing] revealed some measure

of hearing loss . . . the claimant did not consistently complain of significant limitation due to hearing loss and admitted to his doctors in the record that his hearing aids were effective in restoring his hearing . . . [and] that the claimant's subjective complaints of hearing loss are not sufficiently consistent with the objective medical evidence or other evidence of record to warrant any significant work restrictions." *Id*. at 637. The ALJ similarly dispatched the issue of Plaintiff's vision impairment by noting that "the claimant's reduced vision in the right eye would not warrant any significant work restrictions . . . [and] that the claimant's subjective complaints . . . are not sufficiently consistent with the objective medical evidence or other evidence of record to warrant any significant work restrictions." *Id*. at 636. Regarding the side-effects of dizziness and sleepiness from Plaintiff's medications, the ALJ merely noted that Plaintiff either did not "consistently complain to his doctors" about these effects, or his doctors did not believe the complaints were clinically significant, and that "at times the (sic) on several occasions the claimant even specifically denied experiencing any dizziness or other constitutional symptoms from prescribed medications." *Id*. at 637. Astoundingly, the ALJ's third decision in this case maintained that none of this would matter because if Plaintiff's dizziness, sleepiness, and vision and hearing impairments were to be factored into the analysis, "the result in this case would not change because these limitations would not prevent the claimant from performing a full range of medium exertional work with the result that claimant would still be found not disabled at step 5 . . . . because preclusion from climbing ladders, ropes, or scaffolds or from any exposure to work hazards such as unprotected heights or dangerous moving machinery does not significantly erode the unskilled medium job base and because claimant's reduced vision in the right eye certainly does not cause an inability to handle or work with large objects or [an] inability to recognize and avoid workplace hazards." *Id*.

Finally, despite Judge Cousins's explicit findings and instructions in *Risco-I*, the ALJ discounted Dr. Lin's opinions, and moreover, the ALJ did so using nearly the same exact language and reasoning that was previously rejected in *Risco-I*. *See id*. at 640. In direct contravention of *Risco-I*, the ALJ again gave Dr. Lin's opinions "little weight," supported again by the already-rejected rationale to the following effect:

1
2
3
4
5
6
7

> The undersigned accords little weight to the opinions of Dr. Lin because they are largely conclusory with little or nothing in the way of explanation, rationale, or objective support for their conclusions; because they are expressly based at least in part on a full acceptance of the claimant's subjective statements and subjectively reported history concerning the intensity, duration, and limiting effects of his symptoms; and because they are less well supported by the objective medical evidence – including Dr. Linn's own examination notes which were notable only for lumbar tenderness but with normal range of motion of lumbar spine and no spasming (sic) – and other evidence of record outlined above than the better supported medical opinions of the [non-examining] state agency medical consultants."

8   *Id*. (internal citations omitted). Thus, for a third time, and in direct contravention of *Risco-I*, the

9   ALJ discredited Dr. Lin's opinions and determined that Plaintiff was capable of performing the

10  full range of work at the medium exertional level. *Id*. at 631. From that point forward, in similar

11  fashion, the ALJ charted the same course as in his previous two decisions and found Plaintiff

12  capable of performing his past work as a bakery truck driver and, in the alternative, that Plaintiff

13  could successfully transition to a number of other positions that existed in significant numbers in

14  the national economy.

15                                      **DISCUSSION**

16          When Plaintiff filed his applications for benefits under Titles II and XVI, Michael Astrue

17  was the Commissioner of the Social Security Administration. Since that time, Plaintiff's

18  applications have been pending for more than ten years, and they appear no closer to resolution

19  today than a decade ago – meanwhile, no fewer than four persons have occupied the

20  Commissioner's office. Previously, Judge Cousins found that ALJ Gaye had disregarded the

21  mandate of the Appeals Council in his second decision, and now, the undersigned finds that ALJ

22  Gaye disregarded this court's mandate from *Risco-I* in his third decision. While Plaintiff has

23  properly raised the issues of ALJ Gaye's disregard for the holdings and mandate of *Risco-I* in

24  briefing filed in August of 2018, the Commissioner failed to file any responsive pleading until

25  seeking and securing leave of court to file an out of time brief seven months later in March of

26  2020. *See* Def.'s Mot. (dkt. 30). Therein, to the astonishment and disappointment of the court,

27  Defendant failed to address Plaintiff's arguments about ALJ Gaye's disregard of the mandate from

28  *Risco-I*; instead, Defendant's brief simply parrots ALJ Gaye's already-rejected reasons for giving

United States District Court
Northern District of California

1    "little weight" to Dr. Lin's opinions pertaining to Plaintiff's back pain and its associated

2    limitations regarding heavy lifting, or prolonged standing, sitting, or walking. *See id*. at 7-9.

3         The Commissioner's mishandling of this case is unconscionable. ALJ Gaye's refusal to

4    follow the instructions of the Appeals Council (as found by Judge Cousins) combined with his

5    refusal to adhere to the law of the case doctrine and the rule of mandate following the remand

6    ordered in *Risco-I* have unjustifiably kept this case in the pipeline for more than ten years. During

7    this period, Plaintiff has not received a fair hearing, or any benefits. To send the case back to the

8    Commissioner, and allow him to assign the case again to ALJ Gaye for a fourth time seems

9    virtually guaranteed to further delay Plaintiff's application. Enough is enough, the Commissioner

10   is not entitled to repeatedly "adjudicate" a case *ad infinitum* until he correctly applies the proper

11   legal standard, fairness demands that the review process end at some point.

12        Ordinarily, the proper remedy for mistakes and errors occurring in the administrative

13   process is a remand for further proceedings. However, as with all things, there are limits and the

14   Commissioner does not enjoy endless opportunities in hopes of one day getting it right. Typically,

15   where there have been repeated remands; or when the Commissioner has failed to follow the

16   court's remand instructions; or when the Commissioner has been repeatedly unable to carry the

17   applicable burden of proof; or when the delay in adjudicating an application has been

18   extraordinary – courts have found that any one of these equitable considerations, given a complete

19   administrative record, provides sufficient basis for a remand for benefits. *See e.g., Schonewolf v.*

20   *Callahan*, 972 F. Supp. 277, 291 (D. N.J. 1997) (remanded for benefits because the unreasonable

21   delays caused claimant to wait close to six years for the resolution of his initial application for

22   benefits, and because "[t]he ALJ's determination following the second hearing failed to address

23   the matters mandated by the Appeals Council's remand after the first hearing."); *Smith v. Astrue*,

24   507 F. Supp. 2d 1170, 1184 (D. Kan. 2007) (remanding for immediate calculation and award of

25   benefits while explaining that "in three decisions over a seven-year period, ALJ Werner has failed

26   to articulate a proper evaluation of the medical opinions in this record. He has failed to apply the

27   correct legal standard, has not determined whether there are treating source opinions which might

28   be worthy of controlling weight, has not evaluated the relevant factors to determine whether

United States District Court
Northern District of California

8

controlling weight should be given to those opinions, has not weighed the evidence in light of all the relevant regulatory factors to evaluate medical opinions, has not properly examined the reports of the other physicians to see if they outweigh the treating physician's opinion, and has provided no relative weighing of the opinions whatsoever."); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) (remanding for benefits because the ALJ rejected the court's prior discussion of the evidence and explaining that, "[g]iven the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted."); *Del Pilar v. Sullivan*, 756 F. Supp. 117, 121 (S.D.N.Y. 1990) (remanded because the ALJ failed to carry his burden of establishing his decision was based on substantial evidence, and because "the ALJ's decision is peppered with a variety of findings that either misstate the record or are so plainly wrong or misleading as to require reversal.") (internal quotation marks omitted); *Huhta v. Barnhart*, 328 F. Supp. 2d 377, 387-88 (W.D.N.Y. 2004) (remanded for benefits while explaining that "the Commissioner's decision cannot stand. Nine years have elapsed since plaintiff first filed his application for benefits. Further, the Commissioner has had three opportunities to apply the correct legal standards, to weigh the evidence properly, and to meet her burden of proving that plaintiff was not disabled. The Commissioner has failed to meet her burden that plaintiff can perform other work after December 10, 1996."); *Frazee v. Barnhart*, 259 F. Supp. 2d 1182, 1202-03 (D. Kan. 2003) (remanded for benefits because the ALJ had two opportunities to conduct a proper determination but failed to do so and the case had been pending for almost ten years); *Rohan v. Barnhart*, 306 F. Supp. 2d 756, 773-74 (N.D. Ill. 2004) (remanded for benefits because over the course of eleven years, the plaintiff had three hearings before an ALJ, three petitions to the Appeals Council and three appeals to the district court. The court determined that the "obduracy arises from the actions of the SSA throughout the eleven-year existence of this case. The combination of the egregious errors committed by both ALJs, the refusal of the Appeals Council to review decisions replete with mistakes, and the rubber-stamp wielded by the Commissioner in this case shocks the conscience of the Court. Furthermore, the eleven-year delay in this case is unconscionable.").

In *Risco-I*, Judge Cousins found that throughout the doctor-patient relationship, Dr. Lin

9

noted Plaintiff's back pain, and when she wrote the letter and the doctor's certificate, she was well aware of the MRI results. *See AR* at 687. In fact, Judge Cousins specifically noted that the January 10, 2012, doctor's visit (which the ALJ found inconsistent with Dr. Lin's opinion) actually evidenced Plaintiff's back pain and seriously undermined the ALJ's reliance on those treatment notes to discredit her opinions. *Id*. Further, Judge Cousins held, although Dr. Lin's medical opinions (explaining why Plaintiff was unable to perform many types of work) may have been brief and conclusory, that Dr. Lin's opinions were in fact adequately supported by clinical findings. *Id*. It should also not go without mention that Judge Cousins found that "[g]iven the ALJ's erroneous discrediting of Dr. Lin's medical opinions [], it is unclear whether or not the ALJ's determination of Risco's back pain [level] was supported by substantial evidence, since he did not properly consider all of the relevant evidence of back pain . . . [thus] it is likely that had the ALJ given more credit to Dr. Lin's opinions, Risco's allegations of back pain would have led the ALJ to find work limitations." *See id*. at 692-93. Even though *Risco-I* found that the ALJ failed to give specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Lin's medical opinions, ALJ Gaye turned right around and rendered that same finding based on the same reasoning – causing an additional four years of delay in the processing of Plaintiff's application.

In *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016), the Court of Appeals for the Ninth Circuit held that the law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case. The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Id*. at 567 (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The primary concern of the law of the case doctrine is efficiency, and so the doctrine should not be applied when the evidence on remand is substantially different, or when the controlling law has changed, or when applying the doctrine would be otherwise unjust. *Stacy*, 825 F.3d at 567 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).

On the other hand, "[t]he rule of mandate is similar to, but broader than, the law of the case

United States District Court
Northern District of California

doctrine." *Stacy*, 825 F.3d at 567-68 (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (internal quotation marks omitted). The mandate rule provides that any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy*, 825 F.3d at 567-68 (quoting *Hall*, 697 F.3d at 1067)). While an ALJ may "decide anything not foreclosed by the mandate," an ALJ would commit "jurisdictional error" if he or she takes any actions that contradict the mandate. *Stacy*, 825 F.3d at 567-68. Thus, an ALJ must obey a remand order from a federal court, and can neither contradict the remand order, nor deviate from its requirements, and any deviation from a court's remand order in the subsequent administrative proceedings is legal error subject to reversal upon judicial review. *See Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989).

In these situations, reviewing courts have first looked to "the scope of the remand order" to determine what exactly the district court authorized the ALJ to do on remand. *See Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1219-20 (C.D. Cal. 2005). By way of example, in *Ischay*, the court found that the ALJ exceeded the mandate of the district court by taking evidence beyond the "narrow issue" identified in the court's stipulated remand order. *Id*. Similarly, in *Coto v. Astrue*, No. CV 07-3559-PLA, 2008 U.S. Dist. LEXIS 83884, 2008 WL 4642965, at *8 (C.D. Cal. Oct. 20, 2008), the ALJ's decision violated the rule of mandate because it "considered evidence and analyzed issues beyond, and unrelated to, those contemplated by the stipulated remand." On the other hand, courts have held that the ALJ did not violate the rule of mandate where the district court's "remand order was not as narrowly written" and "included broad language." *See Angulo v. Astrue*, No. ED CV 12-01426-VBK, 2013 U.S. Dist. LEXIS 89490, 2013 WL 3223639, at *3 (C.D. Cal. June 25, 2013). In any event, regardless of whether the remand order is narrow or broad, "the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision." *Ischay*, 383 F. Supp. 2d at 1214 (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)); *see e.g.*, *Fallstead v. Colvin*, No. 16-cv-00829-JST, 2017 U.S. Dist. LEXIS 183037, at *25 (N.D. Cal. May 26, 2017) (The "ALJ made several findings that were inconsistent with the *Fallstead I* decision. In doing so, the ALJ violated both the law of the case doctrine and the rule of mandate. Because deviation from the court's remand order in the subsequent administrative

1   proceedings is itself legal error, subject to reversal on further judicial review, the Court reverses

2   the ALJ's adverse credibility finding.") (internal quotation marks and citations omitted). Here, the

3   court finds that ALJ Gaye violated both the law of the case doctrine as well as the mandate rule by

4   ignoring *Risco-I*'s instructions pertaining to Dr. Lin's opinions. As mentioned, Judge Cousins had

5   previously found that the ALJ had already once violated the mandate rule in ignoring the

6   directions of the Appeals Council before *Risco-I*. To leave no room for doubt, on remand, the

7   Commissioner is **ORDERED** to give controlling weight to Dr. Lin's opinions.

8   ***Nature of Remand***

9          Due to the unfathomable delay of more than a decade in the adjudication of Plaintiff's

10  disability application, the court was tempted to simply remand the case with instructions that

11  benefits be immediately awarded notwithstanding the fact that all the factors of the credit as true

12  doctrine are not satisfied. However, because of how poorly the record has been developed during

13  these ten years, and because Dr. Lin's opinions regarding Plaintiff's work-related limitations may

14  not rise to the level of being work-preclusive, the court cannot conclude that further administrative

15  proceedings would serve no useful purpose or that a review of the record gives rise to no serious

16  doubt that Plaintiff is in fact disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1022-23 (9th Cir.

17  2014). However, remand for further consideration by the same ALJ is equally unwarranted. In

18  light of ALJ Gaye's apparently unshakable insistence on finding Plaintiff to be capable of

19  performing the full range of work at the medium exertional level, as well as his lack of due regard

20  for the rule of mandate and the law of the case doctrine, for the reasons discussed below, the court

21  will direct the Commissioner to reassign the case to a different ALJ on remand and to direct that

22  ALJ to expedite the remainder of the proceedings in this case such as to avoid any further delay.

23         Ordinarily, "[t]o whom a case is remanded is generally within the province of the

24  Secretary's responsibility." *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993). In most cases,

25  when a court remands a matter for rehearing, the Appeals Council will generally vacate the prior

26  final decision of the Commissioner and the same ALJ who initially heard the matter will hold a *de*

27  *novo* hearing; however, under certain circumstances a district court can either order or recommend

28  the case to be reassigned to a new ALJ on remand. *See e.g.*, *Sarchet v. Chater*, 78 F.3d 305 (9th

United States District Court
Northern District of California

12

Cir. 1996) (noting that "[t]he tone of the [ALJ's] opinion suggests that she may have an unshakeable commitment to the denial of this applicant's claim" and recommending that the case be transferred to a different ALJ on remand). Accordingly, because "[r]emand to a different ALJ is appropriate in certain cases in order to ensure that a full and fair evaluation is given on remand" (*Lidy v. Sullivan*, 745 F. Supp. 1411, 1418 (S.D. Ind. 1989)), it is well established that district courts have the authority to order, rather than merely recommend, that a different ALJ preside on remand. *See Kolodnay v. Schweiker*, 680 F.2d 878, 879-80 (2d Cir. 1982) (upholding remand to a different ALJ after original ALJ failed to properly consider entire medical record); *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) ("[W]hen the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate."); *Gross v. Astrue*, No. 08-CV-578, 2010 U.S. Dist. LEXIS 4292, 2010 WL 301945, at *3 (E.D.N.Y. Jan. 15, 2010) (reversing denial of benefits by ALJ and remanding case to new ALJ).

Factors to be considered before ordering reassignment include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Sutherland*, 322 F. Supp. 2d at 292; *see also United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 386 (7th Cir. 2010) (an ALJ must be replaced on remand if the court finds that the ALJ "demonstrated a degree of bias . . . that would disqualify him as a matter of due process . . ."); *see also Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1094-95 (E.D. Wis. 2009) (the ALJ "twice failed to produce an acceptable decision"); *Lidy*, 745 F. Supp. at 1418 (stating that the court will only consider remanding the case to a new ALJ if "(1) the plaintiff has requested remand to a different ALJ; and (2) there is some legitimate, compelling reason to have a different ALJ perform the ordered task on remand.") (internal footnote omitted). Thus, when necessary, courts have not hesitated to order the Commissioner to transfer a case to a different ALJ on remand. *See e.g.*, *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998); *Ventura v. Shalala*, 55 F.3d 900, 903

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (3d Cir. 1995) (ALJ behaved in a "coercive and intimidating" manner toward claimant); *Ortiz v.*

2   *Chater*, 1997 U.S. Dist. LEXIS 21675, No. 95-CV-3126, 1997 WL 50217, at *3 n.1 (E.D.N.Y.

3   Jan. 30, 1997) (rather than have the same ALJ review case for third time, the court found that a

4   "fresh look by another ALJ would be beneficial"); *Kendrick v. Sullivan*, 784 F. Supp. 94, 103

5   (S.D.N.Y. 1992) (ordering reassignment because the ALJ in question had been "frequently

6   criticized by reviewing courts for insensitive behavior towards disability claimants").

7          In fact, some courts have held that remand to a different ALJ may be an appropriate

8   remedy, even without an express finding of bias. *See Hartnett*, 21 F. Supp. 2d at 222-23 (court

9   ordered remand to a different ALJ without expressly finding bias, because of the ALJ's "troubling

10  measure of insensitivity," and because the ALJ mischaracterized and misunderstood evidence);

11  Ortiz, 1997 U.S. Dist. LEXIS 21675, 1997 WL 50217, at * 3 n.1 (district judge ordered the case

12  reassigned to a different ALJ without finding bias in the ALJ's earlier decisions); *Miles v. Chater*,

13  84 F.3d 1397, 1401 (11th Cir. 1996) (ordering remand to a different ALJ because of improper

14  statements implying that a particular doctor always found a disability "compromised" the

15  process); *King ex rel. S.K. v. Comm'r of Soc. Sec.*, No. 6:07-cv-537-Orl-22DAB, 2008 U.S. Dist.

16  LEXIS 66614, at *11-12, 14-16 (M.D. Fla. Aug. 28, 2008) (finding that the "ALJ appears to have

17  selectively relied on positive reports," the case was remanded and reassignment was ordered

18  because "assigning this case to a new ALJ will prevent Plaintiff from raising allegations of bias by

19  this same ALJ in any future appeal in this case. The Court holds that remand to a different ALJ is

20  within the power of the Court and is an appropriate remedy here."); *Flentroy-Tennant v. Astrue*,

21  Case No. 3:07-cv-101-J-TEM, 2008 U.S. Dist. LEXIS 24342, 2008 WL 876961 (M.D. Fla. March

22  23, 2008) (holding reassignment was warranted on the second remand where the court did not find

23  that "the ALJ has built the requisite accurate and logical bridge from the evidence to the

24  conclusion").

25          As mentioned above, it is beyond the pale that Plaintiff's disability applications have now

26  been pending for more than ten years and are no closer to a final adjudication than was the case a

27  decade ago. Judge Cousins previously found that ALJ Gaye's second decision had ignored the

28  Appeals Council's mandate as to Dr. Lin's opinions and as to Plaintiff's complaints that his

medications made him dizzy and sleepy (*see AR* at 693, where Judge Cousins noted that "[t]his failure to even consider Risco's claims regarding these symptoms also flies in the face of the Appeals Council's directive"). The court now finds that ALJ Gaye's third decision, which ignored the holdings and instructions issued by Judge Cousins as to Dr. Lin's opinions, clearly flies in the face of the law of the case doctrine and the rule of mandate. Whether it is a matter of bias against Plaintiff, or an unshakable commitment to repeatedly entering the same erroneous finding that Plaintiff can perform the full range of work at the medium exertional level, this case simply cannot be remanded to the same ALJ for a fourth try because the court is not confident that this ALJ will apply the appropriate legal standard, or faithfully execute the mandate of this court, on remand.

## CONCLUSION

Accordingly, the case is **REMANDED** to the Commissioner for further proceedings consistent with the instructions provided herein. On remand, the Commissioner is **ORDERED** to give controlling weight to the opinions expressed by Dr. Lin. The Commissioner is further **ORDERED** to **REASSIGN** this matter to a different ALJ and to direct that ALJ to expedite the prompt and speedy adjudication of Plaintiff's disability applications with due regard to the rulings and instructions provided herein as well as those provided by Judge Cousins in *Risco-I*. Additionally, on remand, the newly assigned ALJ is instructed to consider the other issues raised in Plaintiff's briefing and to modify the opinion as appropriate. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017).

**IT IS SO ORDERED.**

Dated: May 26, 2020

ROBERT M. ILLMAN
United States Magistrate Judge

15